Battle, <T.
 

 The bill is filed for the purpose of obtaining a construction of the will of the late Peter Arrington; and an ascertainment of the rights and liabilities of the parties in relation to his estate, in certain events which have occurred.— Talcing for our guide the well-settled, and well-known rule in the construction of wills, that the intention of the testator as appearing upon his will taken as a whole, is to govern, we proceed to declare our opinion upon such parts of it as are presented for our determination.
 

 The first enquiry is, whether the widow is entitled to the surplus profits of the estate given to her for life or widowhood,. It is manifest that the testator intended her, so long as she remained a widow, to live on the plantation which ho had devised to her, and to cultivate it as lie had done, for the support of herself, her children, and other family. If the profits of the farm were not sufficient for that purpose, the deficiency was to lie supplied out of other funds, in the hands of the ex
 
 *219
 
 ecutor. If tliey were more tlian sufficient, then the question arises, wliat is to be done with tlie surplus? Is the widow entitled to it? We think she is ; upon the general rule that a teiiant for life or widowhood of stock &c., is entitled to the increase or profits during the continuance of her estate, unless otherwise disposed of by the will. Here the profits are otherwise partially disposed of; to wit: so much as might be required to furnish board and other necessaries for the children. Beyond that, they are not otherwise giren away by the will, and of course belong to the widow. Another question then arises, what is the surplus ? We answer in the language of the defendant’s counsel, that it is what remains after keeping up the premises, paying all the necessary charges of cultivating crops, providing necessaries for the family, and leaving on hand a stock of provisions, horses, hogs, &c., required by the exigencies of the farm. In other words, what would be a surplus to a prudent owner and manager, shall be a surplus as to her, and shall belong to her absolutely.
 

 The next enquiry is, whether she is entitled to the profits of the blacksmith shop: and we think clearly, that she is. Those profits, arising during her widowhood, are not mixed with the funds assigned to the support of the family, and are not otherwise disposed of by the will, and therefore belong to her under the general rule.
 

 The hires of the slaves in Alabama will form a part of the personal estate ; 'a fair distributive share of which is given to her, in express terms, by the will. The widow having married, the executor acted -properly in selling the plantation and other property as.directed by the will. The plaintiffs must account for all the items of personalty bequeathed to the widow, and which came into her possession, or the possession of her second husband, unless the same were lost or destroyed without their default, and they will retain the surplus profits as above stated. The only remaining question is, as to the liability of the plaintiffs in this Court, for the loss incurred by a resale of
 
 *220
 
 the property, made necessary by the failure of the plaintiff, Anderson, to comply with Ms contract. What would be the liability of the plaintiffs at law, it is unnecessary to say, except that if liable at all (as to which we express no opinion) the damages would not necessarily he the difference in the price at which the articles sold at the two sales. From the circumstances detailed in the answer of the executor, it is manifest that if the plaintiff acted in good faith in asking the indulgence which the executor granted, and failed to comply with his contract after an honest effort to fulfill it, it would be a hard measure of jiistice to compel him to pay, as damages, the difference between the price which he offered for the property, and that for which it finally sold. The property may not have been worth, and the executor may not have been able to have got as much at the first sale as the plaintiff offered for it; and while he was honestly endeavoring to procure security (if he were honestly endeavoring to do so) the property may have in the fluctuations of prices, depreciated in value ; all which, and perhaps other considerations, might properly influence a jury in assessing the amount of damages for the breach of the contract. We have said thus much to show, that the damages are too uncertain to be a proper subject of enquiry in a Court of Equity, and must he left to he passed upon by a more appropriate tribunal — the jury in a Court of Law.
 

 The plaintiffs may have a decree for an account upon the principles set forth in this opinion.
 

 PeR CURIAM. Decree accordingly.